## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS BLACKWELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO.: 06-CV-06789 |
| | ) | |
| TERRY McCANN, Warden | ) | Judge Robert M. Dow, Jr. |
| Stateville Correctional Center | ) | |
| | ) | |
| Respondent.[1] | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Marcus Blackwell ("Blackwell") has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, in which he presents eight claims: (1) his extended-term sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because facts that justified the extended sentence were not found by a jury beyond a reasonable doubt; (2) his sentences were excessive because they failed to account for his rehabilitative potential; (3) the trial court erred by denying his motion for directed verdict; (4) the trial court erred by denying his motion to suppress statements he made during an interrogation; (5) the trial court erred by considering, during sentencing, statements that he had made without benefit of *Miranda* warnings; (6) the trial court erred by relying on perjured testimony from a witness; (7) ineffective assistance of trial counsel; and (8) ineffective assistance of appellate counsel. Respondent, Warden Terry McCann, moves to dismiss the petition as time-barred under 28 U.S.C. § 2244(d)(1)(A). For the following

---

[1] The original respondent in this case was Deirdre Battaglia. However, as Terry McCann has replaced Battaglia as the warden of Stateville Correctional Center [31], he has been substituted as the proper party respondent. See Rule 2(a) of the Rules Governing § 2254 Cases in the United States District Court; Fed. R. Civ. P. 25(d)(1); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

reasons, the Court grants Respondent's motion [15], respectfully dismissing Blackwell's habeas petition. The Petitioner styled his response [26] to the motion to dismiss as an independent motion. That motion [26] is denied.

I. **Background**

On March 2, 1999, Blackwell was convicted of first degree murder in the Circuit Court of Cook County, Illinois, for firing a gunshot that struck and killed 71-year old Mary Harris on her front porch during a drive-by shooting in Maywood, Illinois.[2] He also was convicted of attempted murder for shooting and seriously injuring teenager Kerry Rouse during the same incident. Blackwell was sentenced to 84 years in prison for the murder, an extended-term sentence based on the fact that the murder victim was over sixty years old, pursuant to 730 ILCS 5/5-3.2(b)(4)(ii). Blackwell was also sentenced to 27 years in prison for the attempted murder. Because he had inflicted severe harm on the attempted murder victim, the Circuit Court imposed the 27-year sentence consecutive to the 84-year sentence under 730 ILCS 5/5-8-4(b).

On appeal, Blackwell argued that his extended-term sentence for first-degree murder violated *Apprendi* because the aggravating factor of the victim's age was not submitted to a jury and proven beyond a reasonable doubt. He also asserted an *Apprendi*-based challenge to the constitutionality of the statute that allowed his sentences to be imposed consecutively. Finally, Blackwell argued that the trial court abused its discretion because it failed to consider mitigating factors such as his young age (16 years old at the time of the shooting) and rehabilitative potential when determining his sentence.

On September 18, 2001, the Appellate Court of Illinois upheld Blackwell's sentence.

---

[2] The factual and procedural history of Blackwell's conviction, sentencing, and direct appeal are taken from *People v. Blackwell*, 325 Ill. App. 3d 354 (1st Dist. 2001), Resp. Ex. A.

The court held that even if the failure to submit the victim's age to the jury amounted to an *Apprendi* violation, it was harmless error, because the defense had not disputed the fact that the victim was 71 years old. Thus, even if the issue of the victim's age had been submitted to a jury, Blackwell still would have been found guilty and would have been eligible for an extended-term sentence. The Appellate Court also held that the imposition of consecutive sentences did not require a jury determination under *Apprendi*, when each of the two sentences, standing on its own, fell within the proper statutory range for the crime committed. Finally, the Appellate Court found no abuse of sentencing discretion by the trial court, because the Appellate Court determined that the trial court had satisfactorily considered mitigating factors by hearing mitigation testimony from several of Blackwell's relatives.

Blackwell filed a petition for leave to appeal ("PLA"), which the Supreme Court of Illinois denied on April 2, 2003. Order Denying PLA, Resp. Ex. B. Blackwell also petitioned the United States Supreme Court for *certiorari*, which was denied on October 6, 2003. *Blackwell v. Illinois*, 540 U.S. 889 (2003), Resp. Ex. C.

Concurrent with his direct appeal, Blackwell sought collateral relief through the Illinois post-conviction petition process.[3] On April 2, 2003, he filed a pro-se post-conviction petition in the Circuit Court of Cook County raising the same claims of trial court error and ineffective assistance of counsel that he raises in claims 3 through 8 of his habeas petition. The Circuit Court summarily dismissed the post-conviction petition on April 11, 2003, on the ground that Blackwell had waived those claims by failing to raise them in his direct appeal. On June 30, 2005, the Appellate Court of Illinois found that the Circuit Court had improperly applied waiver

---

[3] The procedural history of Blackwell's post-conviction petition is taken from the Appellate Court's Rule 23 Order, Resp. Ex. E.

to Blackwell's petition, since claims that were not raised on direct appeal are not waived for purposes of post-conviction relief when the petitioner asserts that the issues were not raised because of ineffectiveness of appellate counsel. However, the Appellate Court ultimately affirmed the dismissal of Blackwell's post-conviction petition, because it found that Blackwell had failed to adequately raise the substance of his claims for review in his post-conviction appeal. The Illinois Supreme Court denied Blackwell's petition for leave to appeal the denial of his post-conviction petition on December 1, 2005. Order Denying PLA, Resp. Ex. F. Therefore, Blackwell has exhausted his state court remedies, both through direct appeal and collateral post-conviction relief.

With his state court remedies exhausted, Blackwell filed this petition for writ of habeas corpus asking this Court to grant all relief to which he may be entitled. Although the Court received the petition on December 8, 2006, the Court will consider the filing date to be December 4, 2006, the date that Blackwell signed the petition and the earliest date on which he could have put the petition into the prison mailing system.[4] See *Jones v. Bertrand*, 171 F.3d 499, 501-02 (7th Cir. 1999) (applying "mailbox rule" to determine filing date of pro se habeas petition).

**II.    Discussion**

In the motion now before the Court, Respondent McCann moves to dismiss, with prejudice, Blackwell's petition for writ of habeas corpus as untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). McCann argues that Blackwell's habeas petition, filed on December 4, 2006, was due on or before December 1, 2006 under AEDPA's one-year statute of limitations period. McCann further argues that equitable tolling of the AEDPA statute of

---

[4] The envelope containing the petition was postmarked on December 5, 2006.

limitations period is unwarranted because Blackwell cannot demonstrate that an extraordinary circumstance beyond his control prevented him from filing his petition in a timely manner.

### A. Statute of Limitations for Habeas Petitions under AEDPA

AEDPA provides that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of —–
>
> > (A) the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In this case, Respondent argues, and Blackwell does not contest, that the one-year AEDPA statutory period began to run when the state court judgment became final by the conclusion of direct review pursuant to 28 U.S.C. § 2244(d)(1)(A). The Illinois state court's conviction and sentence of Blackwell became final by the conclusion of direct review on October 6, 2003, when the United States Supreme Court denied Blackwell's petition for *certiorari*.

However, because Blackwell's state post-conviction petition was pending in Illinois state

5

court as of its filing on April 2, 2003, the one-year AEDPA limitations period was tolled under 28 U.S.C. § 2244(d)(2), and did not begin to run until the Illinois Supreme Court denied the PLA pertaining to his post-conviction petition on December 1, 2005. See *Lawrence v. Florida*, 127 S.Ct 1079, 1083 (2007) (holding that the petition is no longer "pending" for the purposes of tolling the AEDPA statute of limitations period under 28 U.S.C. § 2244(d)(2) after the state court's review is complete, regardless of whether the petitioner seeks *certiorari* from the United States Supreme Court).[5] Therefore, the one-year limitations period expired on December 1, 2006.

Blackwell concedes that his habeas petition of December 4, 2006, was filed three days beyond the statutory deadline. However, Blackwell asks this Court to equitably toll the statute of limitations period and deny Respondent's motion to dismiss, because extraordinary circumstances beyond his control prevented him from filing the petition in a timely manner. Blackwell also argues that his "viable claim of actual innocence" and due diligence during his appeal process warrant equitable tolling. Pet'r Mot. in Opp. at ¶ 12.

**B.     Equitable Tolling**

In general, under the doctrine of equitable tolling, a court may toll the statute of limitations period to benefit an otherwise untimely litigant if the litigant can establish that he has been pursuing his rights diligently and that some extraordinary circumstance prevented timely action. *Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005). The Seventh Circuit has held that equitable tolling may be applied to 28 U.S.C. §2244(d) "when extraordinary circumstances outside of the petitioner's control prevent timely filing of the habeas petition." *Lo v. Endicott*, 506 F.3d 572, 576 (7th Cir. 2007); see also *Araujo v. Chandler*, 435 F.3d 678, 680 (7th Cir.

---

[5] Blackwell did not file a petition for *certiorari* regarding his post-conviction petition.

2005).

### 1. Circumstances Affecting Blackwell's Untimely Filing

Blackwell argues that the following are "extraordinary circumstances" that prevented him from filing his habeas petition in a timely manner: (i) his lack of a high school education and inability to understand habeas corpus law; (ii) his dependence on legal assistance from another inmate who was unexpectedly placed in segregation on October 9, 2006, while working on Blackwell's habeas petition, rendering Blackwell unable to retrieve his petition for almost two months; and (iii) persistent lockdowns at Stateville Penitentiary that prevented him from accessing the law library, copying, and mailing his petition before December 4, 2006.

Taking all facts in the light most favorable to Blackwell for the purposes of the instant motion, Blackwell's education approximates an 8th grade level. TABE Test Result, Pet'r Mot. in Opp., Ex. 1. He was receiving assistance with his habeas petition from fellow Stateville inmate Patrick Pursley, a certified paralegal. Affidavit by Patrick Pursley, Pet'r Mot. in Opp., Ex. 2. After an incident in which Pursley was found to have been insolent to the prison warden, he was placed in segregation for six months on October 9, 2006.[6] *Id.*, Adjustment Committee Results, Pet'r Mot. in Opp., Ex 3. When Pursley was placed in segregation, his belongings, which included his work on Blackwell's habeas petition, were packed away and he was unable to access them. Affidavit by Patrick Pursley, Pet'r Mot. in Opp., Ex. 2. It took Pursley almost two months after he was placed in segregation in early October to get Stateville officials to retrieve the petition and deliver it to Blackwell. *Id.* Once Blackwell received the petition, he attempted

---

[6] The court notes that Exhibit 3 to Petitioner's Motion in Opposition to Respondent's Motion to Dismiss, a report from the Illinois Department of Corrections Adjustment Committee, seems to indicate that Pursley was given one month of segregation for this infraction. However, taking the facts in the light most favorable to the Petitioner for the purposes of the motion to dismiss, the court will credit Pursley's affidavit, in which Pursley attests to being in segregation for six months.

to access the prison law library and copy and prepare the petition for mailing as quickly as he could. Pet'r Mot. in Opp. at ¶ 10. Blackwell does not present facts demonstrating when and for how long he may have been subject to lockdown as a Stateville inmate. He mailed the petition on December 4, 2006. *Id.* at ¶ 11.

The Seventh Circuit has noted that "equitable tolling is rarely granted." *Lo*, 506 F.3d at 576. As explained below, Blackwell's circumstances, while difficult and unfortunate, were not "extraordinary" under Seventh Circuit precedent. Furthermore, they did not truly "prevent" Blackwell from filing his petition in a timely manner, because, despite these impediments, it would have been possible for Blackwell to make a timely filing had he been more diligent. Below, the court will discuss each of the circumstances affecting Blackwell's untimely filing in turn.

### a. Blackwell's Lack of Education

Blackwell first argues that he "does not have a G.E.D. nor high school diploma" and "has been unable to grasp the legal complexities of habeas corpus law." Pet'r Mot. in Opp. at ¶ 6. However, limited education and a lack of knowledge about the legal system "do not constitute the kind of extraordinary circumstances that justify equitable tolling." *Montenegro v. United States*, 248 F.3d 585, 594 (7th Cir. 2001), overruled on other grounds by *Ashley v. United States,* 266 F.3d 671 (7th Cir. 2001). Many litigants, whether in prison or not, lack formal education and legal training. Furthermore, Blackwell's lack of basic education is a not a circumstance entirely beyond his control, even in prison. Indeed, the record shows that Blackwell's reading and math skills have increased while he has been confined. Finally, his lack of education cannot be said to have actually prevented him from making a timely filing. Many prisoners in similar circumstances file habeas petitions. In fact, courts specifically account for the fact that pro se

petitioners lack legal training: "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 127 S.Ct 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### b. Pursley's Segregation

Like many other petitioners who lack legal training, Blackwell chose to rely on legal assistance, in this case from another Stateville inmate, certified paralegal Patrick Pursley. Blackwell argues in part that his ability to timely file his habeas petition was impeded by the fact that Pursley was incapacitated when he was placed in segregation. However, under Seventh Circuit precedent, incapacity or error by legal counsel is not a circumstance that triggers equitable tolling.[7] *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003) (refusing to apply equitable tolling when a habeas petitioner's attorney had filed his petition one day late because of physical and mental ailments). This is particularly true in the post-conviction relief context, where prisoners have no constitutional right to counsel. See *Lawrence*, 120 S.Ct at 1085. Regardless of the actions or inactions of their legal advisors, petitioners like Blackwell "bear ultimate responsibility for their filings, even if that means preparing duplicative petitions: petitioners, 'whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands'" in order to meet relevant deadlines. *Modrowski*, 322 F.3d at 968 (quoting *Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001)). "A prisoner cannot prevent his attorney from becoming incapacitated" but "there is no reason,

---

[7] The Court notes that Pursley, although not actually an attorney, had some legal training and was essentially serving the function of legal counsel by providing Blackwell with assistance in understanding the law and preparing a petition seeking relief from the Court. Therefore, the fact that Pursley was not actually a member of the bar does not affect the Court's analysis on this point.

however unfortunate the result, not to hold the prisoner responsible in this type of situation." *Id.*

Regardless of Pursley's incapacity, it was ultimately Blackwell's responsibility to ensure that his own petition was filed before the deadline. Furthermore, Blackwell has not asserted that he was in any way misled as to the status of his petition such that he could not have been aware of the need to "take matters into his own hands" until it was too late. Compare, *e.g.*, *Fleming v. Evans*, 480 F.3d 1249, 1256 (10th Cir. 2007) (holding that equitable tolling may apply when habeas counsel "deceived [petitioner] into believing that he was actively pursuing [petitioner's] legal remedies when, in fact, he was not"); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (holding that equitable tolling may apply when "[a habeas petitioner] was deceived by his attorney into believing that a timely [habeas] motion had been filed on his behalf"); *Nara v. Frank*, 264 F.3d 310, 320, (3d Cir. 2001) (holding that habeas counsel's misrepresentations about filing status may be grounds for equitable tolling).

Blackwell also argues that he was not able to access his petition when Pursley was placed in segregation because it was stored with Pursley's personal property. Blackwell avers that "it took just under two months to get Stateville officials to retrieve the petition and get it to [Blackwell]," but that he filed the petition as quickly as he could once he received it. Pet'r Mot. in Opp. at ¶¶ 9-10.

However, a lack of access to legal papers is not an extraordinary circumstance sufficient to justify equitable tolling. See *Lloyd v. Van Natta*, 296 F.3d 630, 634 (7th Cir. 2002) (holding that a habeas petitioner's lack of access to a trial transcript did not warrant equitable tolling). The AEDPA statute of limitations period is tolled when a petitioner "could not, despite the exercise of reasonable diligence, have discovered all of the information he needed in order to be able to file his claim on time." *Id.* at 633 (quoting *Johnson*, 265 F.3d at 566); see also 28 U.S.C.

§ 2244(d)(1)(D). However, the physical unavailability of a particular document does not render information undiscoverable when the petitioner has constructive knowledge of the document's contents. See *Lloyd*, 296 F.3d at 633-34. Blackwell had constructive knowledge of his habeas claims, because most were based on events that took place during his own trial, and all had previously been raised in either his direct appeal or his state post-conviction petition. Blackwell may have been less familiar with the habeas process than Pursley, but, given the relaxed pleading standards for pro se litigants, Blackwell had a reasonable opportunity to raise his claims even without Pursley's draft petition. See *Lloyd*, 296 F.3d at 633 (holding that, under pro se pleading standards, a prisoner could have filed a petition presenting his claims even without complete information from his trial transcript). Therefore, Blackwell's lack of access to the petition drafted by Pursley did not prevent Blackwell from being able to file his petition in a timely manner.

Despite Pursley's segregation and Blackwell's resulting lack of access to Pursley's draft petition, this Court finds no reason to believe Blackwell did not have the information he needed to draft an adequate petition himself, or with the help of a third person. Therefore, it was his responsibility to "take matters into his own hands" and draft and file a duplicative petition as best he could when he became aware of Pursley's incapacity. This Court cannot say that Blackwell was "pursuing his rights diligently" when he failed to do so.

          c.        **Prison Conditions**

Finally, Blackwell urges that the Court take into consideration as extraordinary circumstances "the instability of Stateville" and "the persistent lockdowns" that prevented Blackwell from accessing the law library and mailing his petition before December 4, 2006. Pet'r Mot. in Opp. at ¶ 12. Blackwell has not made any showing as to when the lockdowns that

11

affected his library access occurred. Regardless, while the Court recognizes that prison conditions can be difficult and unpredictable in many ways, these conditions simply cannot be considered extraordinary so as to warrant equitable tolling. See *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) (holding that equitable tolling was not justified when a habeas petitioner was placed into segregation for 60 days during which time he had no access to the library); *United States ex rel. Ford v. Page*, 132 F. Supp. 2d 1112, 1116 (N.D. Ill. 2001) (holding that equitable tolling was not justified when a petitioner's alleged a lack of access to the prison law library due to prison lockdown). Such conditions are not "extraordinary" in prisons, and if they justified equitable tolling, the habeas statute of limitations period would be tolled for many prisoners, and its purpose would be defeated.

In view of the Seventh Circuit's extensive jurisprudence in this area, it is evident that neither Blackwell's lack of education, nor Pursley's segregation, nor the conditions at Stateville constitute "extraordinary circumstances" that prevented Blackwell from having the opportunity to timely file his habeas petition. Therefore, equitable tolling is unavailable to excuse the filing of the habeas petition beyond the limitations period prescribed by Congress under the AEDPA.

### 2. Actual Innocence

Blackwell also urges the Court to apply equitable tolling in his case because "the record establishes a viable claim of actual innocence." Pet'r Mot. in Opp. at ¶ 12. A federal court may adjudicate a federal habeas claim that is otherwise procedurally defaulted, or allow a second or successive habeas petition, where a habeas petitioner can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); see *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005). However, "prisoners claiming to be innocent, like those contending that other events spoil the conviction,

must meet the statutory requirement of timely action." *Escamilla*, 426 F.3d at 872. A claim of actual innocence itself "is not a freestanding exception" to the time limits imposed by 28 U.S.C. § 2244(d), and therefore does not justify equitable tolling. *Araujo*, 435 F.3d at 682. The only way in which Blackwell's assertion of actual innocence could toll the one-year statute of limitations period would be if it were based on a factual predicate that could not have been discovered earlier through the exercise of due diligence. See 28 U.S.C. § 2244(d)(1)(D). However, as Respondent points out, Blackwell does not base his assertion of actual innocence on newly discovered claims. The Seventh Circuit has held that "[a]ctual innocence without a newly discovered claim does nothing at all" to toll the limitations period. *Escamilla*, 426 F.3d at 872. Because Blackwell does not present any new information or claims that he could not have discovered earlier, his assertion of actual innocence does not excuse the untimely filing of his habeas petition.

**III.     Conclusion**

Because the factors contributing to Blackwell's untimely habeas filing are not recognized as "extraordinary circumstances" warranting equitable tolling, and because Blackwell's assertion of actual innocence is not based on information that could not have been discovered earlier, tolling of the AEDPA statute of limitations period is not available to excuse the untimeliness of Blackwell's habeas petition.  The Court therefore grants Respondent's motion to dismiss [15] Blackwell's habeas petition as time-barred under 28 U.S.C. § 2244(d)(1)(A).  Petitioner's motion in opposition to respondent's motion to dismiss [27] is denied.

Dated:  September 29, 2008                 _____
                                           Robert M. Dow, Jr.
                                           United States District Judge